UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIK DENNIS BERTAUD,

        Plaintiff,

        v.

Case No. 20-cv-1818-bhl

KILOLO KIJAKAZI,[1] Acting Commissioner
of Social Security Administration,

        Defendant,

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Erik Dennis Bertaud has already yoyoed up and down the Social Security Administration's review process three times. Now he asks the Court to make it four. Bertaud seeks judicial review of an administrative law judge (ALJ) decision denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the ALJ's decision is affirmed.

**Procedural Background**

    Bertaud filed for DIB and SSI on October 1, 2014, alleging a disability that began in May of 2013. (ECF No. 39 at 8; ECF No. 47 at 2.) His claims were denied at the initial and reconsideration levels and by an ALJ after a hearing. (ECF No. 47 at 2.) He then requested review from the Appeals Council, which remanded the case in January 2019. (*Id.*) After another unfavorable decision, Bertaud returned to the Appeals Council, which, again, remanded the case. (*Id.*) On April 8, 2020, Bertaud received his third unfavorable decision from an ALJ. (ECF No. 39 at 8.) He sought remand yet again, but this time, the Appeals Council denied his request for review. (ECF No. 47 at 3.) This action followed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## Factual Background

On May 2, 2013, a 100-pound tree limb fell 60 feet and struck Bertaud in the head. (ECF No. 39 at 9.) He lost consciousness for at least an hour and suffered retrograde and anterograde amnesia of temporally proximate events. (*Id.*) After the accident, various doctors diagnosed him with degenerative disc disease of the cervical spine, cerebral trauma, hearing loss of the right ear, vertigo, migraine headaches, anxiety, depression, post-traumatic stress disorder (PTSD), and somatic symptom disorder. (ECF No. 19-3 at 20-21; ECF No. 19-17 at 10; ECF No. 38-1 at 10.) On December 8, 2014, Bertaud told Dr. Justin Adams that, since the injury, "he ha[d] been having frequent migraines, vertigo, sensations of acceleration and most recently bouts of nausea/vomiting/and concerns for hypothermia (temperature at home of 95.4 F)." (ECF No. 19-13 at 97.) Six months later, Bertaud told Dr. Steve Krawiec that he had vertigo, which caused him to vomit "a lot for up to three days." (ECF No. 19-15 at 98.) Bertaud reported that he experienced these symptoms "a couple times a month on average." (*Id.*)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citations omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Bertaud argues that remand is appropriate because: (1) there is new evidence that the ALJ failed to develop; (2) the ALJ's residual functional capacity (RFC) determination failed to account

for migraines and related disabilities; and (3) the Acting Commissioner of Social Security holds office on a constitutionally illicit basis. (*See* ECF No. 39.) Because none of these arguments necessitate remand, the ALJ's decision will be affirmed.

I. **Remand Is Not Justified Based on Allegations of "New" Evidence or an Undeveloped Record.**

On March 30, 2022, Bertaud filed over 800 pages of allegedly new medical records that he claims were erroneously excluded from his prior administrative proceedings. (ECF No. 38.) He seeks both a "sentence six" remand for purposes of incorporating this new evidence into the administrative record as well as a "sentence four" remand based on the ALJ's failure to uncover and develop this relevant material. A remand on either basis is not warranted.

A. **Bertaud's Additional Evidence is Not "New" and "Material."**

Bertaud first asks the Court to remand the case and require the Social Security Administration to incorporate his new evidence into the record. 42 U.S.C. Section 405(g) sentence six permits "[a] reviewing court [to] order additional evidence to be taken before the Commissioner upon a showing that there exists 'new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005) (quoting 42 U.S.C. §405(g)). According to the Social Security Administration, evidence is "new" if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

In this case, only two of the so-called "new" medical records that Bertaud cites in support of his motion were created *after* the ALJ rendered his unfavorable decision in April 2020. (ECF No. 38-1 at 14, 66-67.) Therefore, apart from those two records, none of the materials Bertaud has proffered can constitute "new" evidence within the meaning of the act.

Ever the innovator, Bertaud proposes an alternative definition whereby evidence is "new" so long as it is "neither cumulative nor irrelevant." He mistakenly cites *Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988) (citing *Evangelista v. Sec'y of Health and Hum. Servs.*, 826 F.2d 136 (1st Cir. 1987)) to support this construction. But he misunderstands the caselaw. The duplicative or irrelevant nature of evidence is simply a further limitation that prevents a claimant from obtaining remand based on newly created documents that summarize information long known. *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003); *see also Sears*, 840 F.2d at 399 (noting that cumulative and/or irrelevant evidence is not "new" even if it was not in existence at the time of

the administrative proceeding). If Bertaud's proposed definition controlled, then even a 30-year-old document that a claimant deliberately chose not to include in his initial filing would qualify as "new" so long as the information therein was not wholly redundant. That is not the standard.

As for the two documents that were created after the ALJ rendered his decision, both are light on substance. The first, created on June 4, 2020, comprises notes from an annual physical exam, including diagnoses of anxiety and PTSD. (ECF No. 38-1 at 66-67.) The second, created on September 2, 2020, is a record from an occupational physical therapy session, which also lists diagnoses of anxiety and PTSD. (*Id.* at 14.) Even reports that did not exist at the time of an ALJ's decision are not "new" if "the information summarized in the report[s] had long been in existence." *Jens*, 347 F.3d at 214. In this case, the ALJ's decision explicitly recognized Bertaud's anxiety diagnosis. (ECF No. 19-3 at 21.) And the supposedly "new" records add nothing to that diagnosis beyond bare recitation of its existence. In other words, with respect to anxiety, the new records are cumulative, and thereby fail to meet even the less stringent standard for newness that Bertaud proposed.

But the administrative record is devoid of references to PTSD, and the ALJ's decision lacks any mention of the disorder. The PTSD diagnosis is therefore "new" and will support remand, but only if it is material and Bertaud can show good cause for his failure to incorporate it into the original record. Good cause aside, Bertraud has not shown the new PTSD documents are material.

"New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (citation omitted). Here, the new evidence shows a PTSD diagnosis, but it does not elaborate on the severity or effects of that diagnosis. It contains no relevant examinations, nor does it reference symptoms. In short, it gives no reason to believe Bertaud's PTSD limits him in any way, so it could not have led the ALJ to a different conclusion. As a result, it is not "material," and cannot support a sentence six remand.

### B. The ALJ Did Not Fail to Develop the Record.

Bertaud relatedly argues for a sentence four remand based on the ALJ's failure to develop the record, as shown by the over-800 missing pages of medical documents. "Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991)). But "an ALJ is entitled to presume that a claimant represented by counsel in the

administrative hearings has made his best case." *Sears*, 840 F.2d at 402 (citing *Glenn v. Sec'y of Health and Hum. Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). And the Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Due to this program of substantial deference, even *pro se* claimants are not entitled to remand unless they can show prejudice, which requires them to "set forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.*

Bertaud had a lawyer throughout the administrative process. (ECF No. 47 at 27-28.) And, at the most recent administrative hearing, that lawyer told the ALJ that the record was "complete to the best of [his] knowledge." (ECF No. 19-3 at 48.) He also demonstrated the ability to supplement the record with new material when necessary. (ECF No. 47 at 29.) Under those circumstances, the ALJ's duty to develop the record reached its nadir. *See Nicholson v. Astrue*, 341 F. App'x 248, 254 (7th Cir. 2009) ("The degree of the ALJ's responsibility to take the initiative is influenced, if not entirely dictated, by the presence or absence of counsel for the claimant.").

Nevertheless, Bertaud argues, had the ALJ amassed a fuller medical record, he would never have described Bertaud's treatments as "limited," "minimal," "routine," and "conservative." (ECF No. 48 at 12.) Bertaud places special weight on the ALJ's failure to retrieve Dr. Pierce Sherrill's progress notes from a February 8, 2016 appointment listed as the "next scheduled appointment" on a Form SSA-3341. (ECF No. 19-10 at 91.) On the Form SSA-3341 cover page, the Social Security Administration assures claimants that they "do not need to ask doctors or hospitals for any medical records that [they] do not already have" because, with the claimant's permission, the Administration will request those records. (ECF No. 48 at 11.) If the Administration leaves a lead unexplored, it runs the risk of overlooking relevant medical evidence and misjudging a claimant's disability. According to Bertaud, that is what happened here. But nothing in Dr. Sherrill's February 8, 2016 report makes its omission prejudicial. The report mainly reiterates previously available information. (ECF No. 38-1 at 732-734.) To the extent it treads new ground, it does so in a manner consistent with the ALJ's decision. (*Compare* ECF No. 38-1 at 733 (restricting Bertaud from driving), *with* ECF No. 19-3 at 25 (excluding Bertaud from jobs involving the use of dangerous moving machinery).) Given the Seventh Circuit's propensity to uphold an ALJ's determination of when the record is complete, especially when a claimant is represented by counsel, the Court cannot agree that Bertaud has proven prejudice in this instance.

## II. The ALJ Did Not Err in Analyzing Bertaud's Migraines.

Bertaud's next argument is that the ALJ offered the vocational expert (VE) a flawed hypothetical based on an RFC determination that omitted restrictions associated with migraines, depression, anxiety, somatic symptom disorder, and vertigo and resulted in an overbroad assessment of jobs available in the national economy. He also claims the ALJ erred in failing to analyze his migraines as a listed impairment. Neither argument prevails.

### A. The ALJ's RFC Determination Appropriately Accounted for Migraines, Depression, Anxiety, Somatic Symptom Disorder, and Vertigo.

A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). A Court must remand for further proceedings where an ALJ's improper exclusion of limitations leads him to "erroneously conclude that [a claimant] could be gainfully employed." *Yurt v. Colvin*, 758 F.3d 850, 852 (7th Cir. 2014).

As an initial matter, there is substantial support for the ALJ's determination that Bertaud's depression and anxiety were "nonsevere." (ECF No. 19-3 at 21.) The Appeals Council remanded this case to the ALJ, in part, because the prior decision did not consider some of Bertaud's mental impairments. (ECF No. 19-6 at 5.) To correct this oversight, the ALJ engaged in a robust discussion of Bertaud's depression and anxiety but found that neither limited him in any of the four "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders." (ECF No. 19-3 at 21.) Bertaud identifies nothing in the record to upset this analysis. *See Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022) (remarking that the claimant bears the burden to establish disability).

Similarly, although the ALJ did not mention somatic symptom disorder in his decision, he did not need to. "[A]n 'ALJ need not . . . discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability.'" *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). At most, Bertaud pointed to his somatic symptom disorder diagnosis and hypothesized that it might hinder him. "But pointing to various diagnoses and complaints and saying that they might hinder [the claimant] is insufficient to establish the existence of a functional

limitation." *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018). Because Bertaud proffered no evidence that his somatic symptom disorder engendered any limitations, the ALJ had no duty to dedicate any time to analyzing it.

Unlike the previous three ailments, the ALJ concluded that Bertaud's migraines and vertigo constituted severe impairments and fashioned his RFC determination to account for the limitations they impose. (ECF No. 19-3 at 20.) But Bertaud contends that his migraines and vertigo restrict him in more ways than the ALJ's analysis contemplates. In particular, he asserts that his migraines and vertigo are so unpredictable and debilitating that they render him essentially unemployable. To support this proposition, he relies primarily on two subjective reports. On December 8, 2014, he told Dr. Justin Adams that "he ha[d] been having frequent migraines, vertigo, sensations of acceleration and most recently bouts of nausea/vomiting/and concerns for hypothermia." (ECF No. 19-13 at 97.) On June 22, 2015, he told Dr. Steve Krawiec that he had vertigo that caused him to vomit and that "he might be vomiting a lot for up to three days." (ECF No. 19-15 at 98.) "He said that sort of thing occurs a couple times a month on average." (*Id.*) Bertaud argues that this evidence establishes that his migraines and vertigo will cause excessive absenteeism or off-task behavior, which precludes competitive employment. (ECF No. 39 at 25.)

The ALJ, though, determined that these subjective complaints were "only partial[ly] consistent with the objective medical evidence," and there was "no treating medical source statement to the contrary to consider and weigh." (ECF No. 19-3 at 33.) While an ALJ may not use objective evidence to discredit a subjective claim of impairment, he can use it to evaluate the intensity, persistence, and limiting effects of that impairment. *See Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010). In addition, an ALJ's RFC analysis must "rely on expert opinions" in the record. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). In this case, the ALJ reasonably found that Bertaud's self-reports oversold his limitations and that no expert opinion embodied the RFC he sought. And Bertaud cites nothing that amounts "to medical evidence that [his] RFC should have included" further restrictions. *Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022). The ALJ's RFC "accommodates [Bertaud's] cerebral trauma, vertigo, and migraine headaches[] by requiring that he be allowed to wear sunglasses for indoor work" and limiting him "to fifteen minutes of computer screen time with the ability to avoid computer screen[s] for fifteen minutes before resuming." (ECF No. 19-3 at 33.) These limitations are supported by substantial evidence

in the record.[2] Bertaud's proposed limitations are not. The ALJ's RFC determination is, therefore, sound.

## B. The ALJ's Failure to Discuss Listing 11.02 Is, At Worst, Harmless Error.

At step three of the five-step evaluation process, the ALJ found that Bertaud did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. (ECF No. 19-3 at 24-25.) The ALJ did not, however, measure Bertaud's migraines against listing 11.02. That listing relates to epilepsy, but because migraines are not a listed impairment, the Commissioner evaluates migraines under 11.02(B) and (D). *See Jozefyk v. Saul*, No. 19-cv-1606, 2020 WL 5876063, at *3 (E.D. Wis. Oct. 2, 2020). Bertaud argues that his migraines medically equal the listing for epilepsy, entitling him to an automatic finding of disability.

"For a claimant to qualify for benefits by showing that his unlisted impairment . . . is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). If he does not do so, remand is unwarranted, even where the ALJ did not discuss the relevant listing. *See Lloyd v. Berryhill*, 682 F. App'x 491, 496 (7th Cir. 2017). To medically equal listing 11.02(B), a claimant's migraines must occur "at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §11.02(B). To medically equal listing 11.02(D), a claimant's migraines must occur "at least once every 2 weeks for at least 3 consecutive months . . . despite adherence to prescribed treatment." *Id.* at §11.02(D). In addition, the claimant must show "a marked limitation in" (1) "Physical functioning;" (2) "Understanding, remembering, or applying information;" (3) "Interacting with others;" (4) "Concentrating, persisting, or maintaining pace;" or (5) "Adapting or managing oneself." *Id.* at §11.02(D)1-5. "'Despite adherence to prescribed treatment' means that [the claimant] has taken medication(s) or followed other treatment procedures for [his] neurological disorder(s) as prescribed by a physician for three consecutive months but [his] impairment continues to meet the other listing requirements despite this treatment." *Id.* at §11.00(C).

---

[2] The ALJ relied on the objective medical evidence as well as the opinions of Dr. Syd Foster, Dr. Ronald Shaw, Dr. Deborah Pape, Dr. Susan Donahoo, Dr. Pierce Sherrill, Dr. Marc Novom, Dr. Steve Krawiec, Shari Asher, Bridget Kulick, and Harry Sydney III. (ECF No. 19-3 at 30-33.)

Contrary to his contentions, Bertaud lacks medical findings that establish his migraines as equal in severity to all criteria set forth in listings 11.02(B) and/or (D). Both require that the migraines occur with a specific minimum frequency—once a week for (B) and once every two weeks for (D). Yet Bertaud's evidence only vaguely relates "frequent migraines," (ECF No. 19-13 at 97) and vomiting "a couple times a month on average." (ECF No. 19-15 at 98.) Neither satisfies listing 11.02's particular standard. Moreover, Bertaud testified that doctors prescribed him Gabapentin for his headaches, but he only took one dose because of unpleasant side effects. (ECF No. 19-3 at 64-65.) Both 11.02(B) and (D) require "adherence to prescribed treatment," which means *three months* on a medical regimen. Bertaud's single day comes up woefully short. On these facts, remand is useless. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

### III. The Removability of the Commissioner of Social Security is Not a Reason for Remand.

Lastly, Bertaud argues that the ALJ lacked the authority to adjudicate his claim because any authority he had was derived from the Commissioner of Social Security, who holds office on a constitutionally illicit basis. The parties agree that 42 U.S.C. Section 902(a)(3), which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers principle articulated in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). (ECF No. 47 at 4.) But even where an unconstitutional removal restriction exists, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). "[T]he unlawfulness of the removal provision does not strip [an official] of the power to undertake the other responsibilities of [her] office." *Id.* at 1788 n. 23. In other words, to obtain remand, Bertaud must show that the improper removal restriction actually harmed him. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022). He can make no such showing.

Instead, Bertaud cites *Tafoya v. Kijakazi*, 551 F. Supp. 3d 1054 (D. Col. 2021) for the proposition that the ALJ's determinations are null regardless of what actual harm they inflicted. This, however, is not what *Tafoya* says. In that case, the Court considered only a plaintiff's *standing* to bring the separation of powers constitutional argument. *Id.* at 1059. But in finding standing, it also noted that "[t]he outcome of *Collins* is . . . [in]auspicious for plaintiff's substantive claim" and acknowledged that it "may well be that, even if the removal provisions of the Social

Security Act are unconstitutional, the agency's ALJs still had authority to issue disability determinations." *Id.* at 1059 n. 6. This is unsurprising. "Every court that has addressed the merits of [Bertaud's] constitutional claim has rejected it." *Robinson v. Kijakazi*, No. 21-cv-238-SCD, 2022 WL 443923, at *7 (E.D. Wis. Feb. 14, 2022) (collecting cases). Add this Court to the list. Because Bertaud cannot show compensable harm, remand is unwarranted.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Bertaud's motion for summary judgment, ECF No. 39, is **DENIED**, the Acting Commissioner's decision is **affirmed**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 20, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge